FLORENCE T. NAKAKUNI
United States Attorney
DERRICK WATSON (Cal. Bar No. 154427)
Assistant U.S. Attorney, District of Hawaii
PJKK Federal Building, Room 6-100
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Tel: (808) 541-2850 / Fax: (808) 541-3752
Email: Derrick.Watson@usdoj.gov

IGNACIA S. MORENO, Assistant Attorney General
Environment and Natural Resources Division
SAMANTHA KLEIN FRANK (N.Y. Bar No. SK-9874)
Trial Attorney, Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 663, Ben Franklin Station
Washington, DC 20004-0663
Tel: (202) 305-0474 / Fax: (202) 305-0506
[Additional Counsel on Signature Page]
Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GUAM PRESERVATION TRUST, *et al.*, ) ) | No. 1:10-cv-00677-LEK-RLP |
| Plaintiffs, ) | |
| v. ) ) | DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT |
| KATHERINE GREGORY, Rear ) Admiral, Commanding Officer, Naval ) Facilities Engineering Command, ) Pacific, *et al.*, ) | |
| Defendants. ) | DATE:   TBD TIME:   TBD |
| _____ ) | COURT: AHA NONOI JUDGE:   Hon. Leslie E. Kobayashi |

GUAM PRESERVATION TRUST v. GREGORY, 1:10-CV-00677-LEK-RLP
DEFENDANTS' MEMORANDUM I/S/O MOTION TO DISMISS COMPLAINT

TABLE OF CONTENTS

I.  INTRODUCTION.................................................... 1

II.  PROCEDURAL AND STATUTORY BACKGROUND.................... 2

        A.      The Department of Defense's Guam and CNMI Military Relocation. 2

                1.      The Guam Final Environmental Impact Statement.......... 2

                2.      The Navy's September 2010 Record of Decision........... 3

                3.      The NHPA Section 106 Consultation Process.............. 5

        B.      Plaintiffs' Challenges Regarding the Training Range Complex..... 6

        C.      Defendants' Ongoing Administrative Review Processes........... 7

        D.      Statutory Background..................................... 10

                1.      Administrative Procedure Act........................... 10

                2.      National Environmental Policy Act...................... 11

                3.      National Historic Preservation Act..................... 12

                4.____Coastal Zone Management Act....................... 13

III.  ARGUMENT............................................... 14

        A.      Standard of Judicial Review............................... 14

        B.      The Court Should Dismiss this Complaint for Lack of Subject Matter Jurisdiction....................................... 15

                1.      The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims Because There is No Final Agency Action......... 15

2.      The Court Lacks Subject Matter Jurisdiction Because
        Plaintiffs' Claims Are Not Ripe for Judicial Review........ 23

C.      The Court Alternatively Should Defer Review on Prudential
        Grounds........................................... 26

        1.      The Doctrine of Prudential Ripeness Counsels Against
                Exercising Judicial Review at this Juncture.............. 26

        2.      The Doctrine of Primary Jurisdiction Also Warrants
                Deferring Premature Judicial Review. .................. 27

IV.  CONCLUSION. ............................................ 29

TABLE OF AUTHORITIES

FEDERAL CASES

Abbott Laboratories v. Gardner,
     387 U.S. 136 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 23

Andrus v. Sierra Club,
     442 U.S. 347 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

AT&T Corp. v. Coeur d'Alene Tribe,
     295 F.3d 899 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Bennett v. Spear,
     520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Brown v. MCI WorldCom Network Servs., Inc.,
     277 F.3d 1166 (9th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

California v. Norton,
     311 F.3d 1162 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cent. Delta Water Agency v. United States Fish and Wildlife Serv.,
     653 F.Supp.2d 1066 (E.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 16, 23

Citizens to Preserve Overton Park, Inc. v. Volpe,
     401 U.S. 402 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

Dep't of Transp. v. Public Citizen,
     541 U.S. 752 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Devia v. Nuclear Regulatory Comm'n,
     492 F.3d 421 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

FTC v. Standard Oil Co. of Calif.
     449 U.S. 232 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 22

Haw. Cnty. Green Party v. Clinton,
    124 F. Supp. 2d 1173 (D. Haw. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

Indus. Customers of NW Utils. v. Bonneville Power Admin.,
    408 F.3d 638 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 22

Kleppe v. Sierra Club,
    427 U.S. 390 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Kokkonen v. Guardian Life Ins. Co. of America,
    511 U.S. 375 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Laguna Greenbelt v. United States Dep't of Transp.,
    42 F.3d 517 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Lujan v. National Wildlife Federation,
    497 U.S. 871 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Marsh v. Oregon Natural Resources Council,
    490 U.S. 360 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

McClung v. City of Summer,
    548 F.3d 1219 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,
    463 U.S. 29 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Municipality of Anchorage v. United States,
    980 F.2d 1320 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

Nat'l Park Hospitality Ass'n v. Dep't of the Interior,
    538 U.S. 803 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

Norton v. Southern Utah Wilderness Alliance,
    542 U.S. 55 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Ohio Forestry Ass'n, Inc. v. Sierra Club,
   523 U.S. 726 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

Poulos v. Caesars World, Inc.,
   379 F.3d 654 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29

Presidio Golf Club v. National Park Service,
   155 F.3d 1153 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Public Citizen v. Office of the U.S. Trade Representative,
   970 F.2d 916 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Rhoades v. Avon Products,
   504 F.3d 1151 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Robertson v. Methow Valley Citizens Council,
   490 U.S. 332 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

San Carlos Apache Tribe v. United States,
   417 F.3d 1091 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Sierra Club v. U.S. Nuclear Reg'y Comm'n,
   825 F.2d 1356 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

St. Clair v. City of Chico,
   880 F.2d 199 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Steel Co. v. Citizens for a Better Env't.,
   523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Stock West, Inc. v. Confederated Tribes,
   873 F.2d 1221 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Syntek Semiconductor Co. v. Microchip Tech., Inc.,
   307 F.3d 775 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Texas v. United States,
     523 U.S. 296 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Thornhill Publ'g Co. v. Gen. Tel. & Electronics Corp.,
     594 F.2d 730 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Town of Fairview v. U.S. Dept. of Transp.,
     201 F. Supp.2d 64 (D. D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Ukiah Valley Med. Ctr. v. FTC,
     911 F.2d 261 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20, 22

United States v. Culliton,
     328 F.3d 1074 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

United States v. Gen. Dynamics Corp.,
     828 F.2d 1356 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council,
     435 U.S. 519 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Warren v. Fox Family Worldwide, Inc.,
     328 F.3d 1136 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Wilderness Soc'y v. Ward,
     188 F.3d 1130 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## FEDERAL STATUTES

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

5 U.S.C. §§ 701-706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

5 U.S.C. §§ 706(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

16 U.S.C. § 1451-1465 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

16 U.S.C. § 1455(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

16 U.S.C. § 1456(c)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

16 U.S.C. § 470f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

16 U.S.C. §§ 1451-1465 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

16 U.S.C. §§ 470 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

42 U.S.C. § 4332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

42 U.S.C. § 4332(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

42 U.S.C. §§ 4321-4332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15

## FEDERAL REGULATIONS

15 C.F.R. § 930.33(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

15 C.F.R. § 930.43(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

15 C.F.R. § 930.44 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

36 C.F.R. Part 800 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

40 C.F.R. § 1502.14(e) (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

## I.  INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(1), defendants Katherine Gregory, *et al.*, officials and organizations within the United States Department of Defense (DoD), move to dismiss the Complaint for Declaratory and Injunctive Relief filed by the plaintiffs, Guam Preservation Trust, *et al.*  The court should dismiss the Complaint for lack of subject matter jurisdiction on three separate, though related, grounds.

First, the defendants have not taken a final agency action with respect to the selection of a location for the proposed future live-fire training range complex to support the relocation of approximately 8,600 U.S. Marines and approximately 9,000 dependents from Okinawa, Japan, to the United States Territory of Guam (Guam Relocation).  The Department of the Navy's September 2010 Record of Decision (ROD), attached as Exhibit A, explicitly deferred a decision on the location of the training range complex.  See, e.g., ROD at 2, 4-5, 32, 88.  Absent a final agency action on the site selection, the defendants have not waived their sovereign immunity under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706.  Without the requisite waiver of sovereign immunity under the APA, there is no basis for judicial review of the claims alleged in the Complaint, all of which pertain, exclusively, to the

location of the live-fire training range complex.

Second, the plaintiffs' claims are not ripe for judicial review under the constitutional and prudential elements of the ripeness doctrine.  As the record demonstrates, the Navy has not issued a decision selecting a specific location for the live-fire training range complex, and the Navy currently is undertaking an administrative review process related to this very issue.  Together, these facts demonstrate that the matter is not fit for judicial review and that the plaintiffs will suffer no hardship if judicial review is withheld at this time.

Third, even if the court were to find that the Navy had taken final agency action and this matter was ripe under Article III, the prudential doctrine of primary jurisdiction warrants withholding judicial review until the Navy completes its ongoing administrative review.  Once the Navy actually issues a decision selecting a specific site for the live-fire training range complex, the court would be in a position to conduct judicial review based on the complete record for that decision.

## II.  PROCEDURAL AND STATUTORY BACKGROUND

**A.**   **The Department of Defense's Guam and CNMI Military Relocation**

**1.**    **The Guam Final Environmental Impact Statement**

The Draft and Final Environmental Impact Statements for the Guam and CNMI Military Relocation (Guam DEIS and Guam FEIS; collectively, Guam EIS) analyze

the environmental consequences of various alternatives to support the Guam Relocation. The Guam EIS assessed the construction of a main cantonment (headquarters, administrative support, residential housing, and community support), non-firing training ranges, air combat element facilities, waterfront facilities, and a live-fire training range complex, as well as the environmental impact of siting a transient nuclear aircraft carrier wharf in Apra Harbor on the west coast of Guam and siting the Army Air and Missile Defense Task Force.

### 2.     The Navy's September 2010 Record of Decision

The ROD selected the preferred alternatives identified in the Guam EIS for elements of the Guam Relocation, including (1) the main cantonment area at the Naval Computer and Telecommunications Station (NCTS) Finegayan, (2) family housing at the former Federal Aviation Administration property/South Finegayan, (3) aviation activities at Andersen Air Force Base North Ramp, and (4) waterfront operations at Apra Harbor.[1/]   ROD at 14-16, 88. On the issue before this court, however, the Navy expressly deferred its decision, declining to select a specific site for the proposed live-fire training range complex. ROD at 2, 4-5, 32, 88.

The Navy expressly held in abeyance the decision on locating the training

---

[1/] The attached Exhibit B is a map from the Guam FEIS, which shows the location of the principal points of reference. Guam FEIS at ES-11, Fig. ES-2.

range complex pending completion of then-ongoing consultations being conducted under § 106 of the NHPA.  ROD at 4.  The ROD states that the Navy has "elected to defer selection of a specific site for the construction and operation of a live fire training range complex in the Route 15 area on Guam pending completion of the Section 106 consultation process under the National Historic Preservation Act (NHPA)."  ROD at 2.  The ROD notes that "Alternative A remains [Navy's] preferred alternative.  Upon completion of the Section 106 consultation process, should [Navy] select this alternative it would involve the acquisition of approximately 1,090 acres of non-DoD owned lands on a plateau across from Andersen AFB South along Route 15."  ROD at 5.[2]  Although the preferred alternative presented in the Guam FEIS was located in the Route 15 area and, at the time of the ROD, the Navy anticipated that Alternative A would remain the preferred alternative, the ROD did not issue a final decision as to the location for the live-fire training range complex.  Moreover, as shown in Part II.C. below, the Section 106 process prompted the Navy to expand its examination to consider other locations before issuing a final decision on the training range complex.

─────────────────────

[2]  To provide a public record explaining the considerations affecting the alternatives for the training range, DoD included a 20-page Attachment 2 to the ROD summarizing the analysis conducted up to the point that the Navy elected to defer selection of a specific location until completion of the Section 106 process.

### 3.      The NHPA Section 106 Consultation Process

In March 2011, the DoD subsequently completed the Section 106 process when the DoD executed the "Programmatic Agreement Among the Department of Defense, the Advisory Council on Historic Preservation, the Guam State Historic Preservation Officer, and the Commonwealth of the Northern Mariana Islands State Historic Preservation Officer Regarding the Military Relocation to the Islands of Guam and Tinian" (PA) (attached as Exhibit C). <u>See</u> Declaration of Joseph D. Ludovici ¶ 11 (attached as Exhibit D). In the PA, DoD committed to undertake consultation with the PA Signatories, Invited Signatories, Concurring Parties, and the public regarding any potential adverse effects associated with siting the live-fire training ranges on historic properties. PA at 15. Specifically, this consultation, according to the PA, "will address the location, orientation, design, and operation of the ranges *within any area that may be selected* in the Navy's [ROD] for the live fire training range complex." PA at 15 (emphasis added).

The PA sets forth a framework for consulting with the public and other parties. As part of the consultation process, DoD committed to reviewing any "new information on alternate locations for the live fire training range complex outside those assessed in the FEIS" submitted by PA Signatories, Invited Signatories, Concurring Parties, and the public and to determining whether supplemental NEPA

or NHPA analysis is warranted, based on such information.  PA at 16.  In determining whether new information warrants supplemental analysis, DoD agreed to apply the suitability and feasibility criteria that were used in the Guam FEIS to identify reasonable alternatives.  PA at 16.  Once a site is selected, DoD will develop a Range Mitigation Plan if the consultation process required by the PA were to result in a finding of adverse effect, then provide a draft of any such plan to the Signatories, Invited Signatories, and Concurring Parties.  PA at 17.

In the PA, the DoD also agreed to "provide 24 hour a day/seven day a week unimpeded access" to the Pågat Village and Pågat Cave historic sites "*if* DoD selects an alternative for the range complex in the Route 15 area as noted in the FEIS."  PA at 16 (emphasis added).  This conditional language -- "*if* DoD selects an alternative … in the Route 15 area" -- reinforces the fact that DoD has not yet selected a site for the training range complex.  As Mr. Ludovici sworn Declaration attested, the "Navy has yet to make a final decision on the location of the live-fire training range complex."  Ludovici Declaration ¶ 13.  The defendants have confirmed with the Navy that this statement in Mr. Ludovici's May 24, 2011, Declaration (Doc. 60-5) remains accurate as of the date of this filing, July 29, 2011.

**B.    Plaintiffs' Challenges Regarding the Training Range Complex**

The plaintiffs' Complaint includes 13 claims for relief, including 11 claims

under the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4332, one claim under § 106 of the National Historic Preservation Act (NHPA), 16 U.S.C. § 470f, and one claim under the Coastal Zone Management Act (CZMA), 16 U.S.C. § 1451-1465. The Complaint expressly states that all 13 claims are limited to "the Defendants' decision to choose Pågat Village and its surrounds as the site of the firing range complex...." Complaint, ¶ 6. The Complaint concedes that the plaintiffs "do not contest in this lawsuit the larger relocation of Marines and other forces to Guam." Doc. 1, Complaint, ¶ 5.

The plaintiffs allege that the court has jurisdiction over the NEPA claims pursuant to the APA, 5 U.S.C. §§ 701-706, because the ROD "represents final agency action with respect to Pågat." Complaint, ¶ 66. The plaintiffs also allege that DoD violated the NHPA and the APA by issuing the ROD prior to completing the NHPA Section 106 review process (Count XII, Complaint ¶¶ 97-104). Finally, they allege a failure under the APA to comply with the CZMA (Count XIII, Complaint ¶¶ 105-112). All 13 statutory claims involve judicial review under the APA.

## C.   Defendants' Ongoing Administrative Review Processes

Mr. Ludovici, as Director of the Joint Guam Program Office, was the Navy official responsible for the "oversight of planning, programming, communications, environmental assessment and construction for the Defense Realignment Program

Initiative to relocate over 8,000 U.S. Marines from Okinawa Japan to Guam." Ludovici Declaration ¶ 1. Mr. Ludovici describes the screening process that the Navy took to assess alternatives for the live-fire training range complex in preparing the Guam EIS. Id. ¶¶ 8-11. This included identifying operational requirements, determining the complex's physical footprint, and establishing three-dimensional buffer zones known as "surface danger zones" (SDZs) to avoid and minimize impacts from live-fire training. See ROD at 124; Declaration of Edward R. Sobieranski III, ¶¶ 15-20 (attached as Exhibit E). Locations in the FEIS reflected discussions with the Government of Guam and Guam Stakeholders Working Group to identify sites for the live-fire training range complex. ROD at 128-134.

As the court recognized, the Navy is undertaking an administrative review process to meet its commitment in the PA to minimize impacts to cultural resources when it eventually selects a site for the training range complex. June 30, 2011, Order Denying Defendants' Motion for Voluntary Remand and Stay (Doc. 76) at 13-14; Ludovici Declaration ¶¶ 18-21. This process involves analyzing whether using a probabilistic model to assess site-specific live-fire impacts is warranted at the locations discussed in the Guam FEIS and the ROD (i.e., whether a smaller physical footprint for the live-fire training range complex would alter the suitability or feasibility of such locations) and, if so, whether application of the probabilistic model

minimizes the overall physical footprint of the live-fire training range complex, while retaining the same margin of safety.  Sobieranski Declaration ¶¶ 27-30.

After the modeling is completed, the Navy will analyze "the results of the probabilistic modeling against the suitability and feasibility criteria to determine whether any locations previously dismissed [from detailed consideration in the FEIS] are now reasonable alternatives for siting the live-fire training range complex . . . ." Ludovici Declaration, ¶ 21.  The results of this analysis will be set forth in a Supplemental Information Report (SIR), which will be used to determine whether the Navy must conduct a supplemental assessment under NEPA or whether the Navy may proceed with the issuance of a decision regarding the location of the live-fire training range complex.  Id. ¶ 22.[3]  Only after the ongoing administrative review process is complete will the Navy be prepared to issue a decision selecting a site for the live-fire training range complex to support the Guam Relocation.

The Navy has not made "any irreversible or irretrievable commitments of resources" that would conflict with NEPA's requirement in 42 U.S.C. § 4332(2)(C).

---

[3] If DoD determines, based on the draft SIR, that additional NEPA review is necessary through preparation of a Supplemental EIS (SEIS), DoD intends to proceed directly to that process without first circulating a draft SIR.  The NEPA process would involve preparing a draft SEIS, providing for public comment, preparing a final SEIS, and issuing a supplemental ROD.

The defendants explained that any ground-disturbing activities in the Route 15 area near Pågat would be limited to soil borings that would not have any impact on the suitability of any area for possible selection as a location for the training range complex.  Defendants' Letter Brief (Doc. 71) at 3-4; <u>see</u> Declaration of Captain Don S. Chandler, ¶ 25 (attached as Exhibit F).  Moreover, budget limitations confirm that the Navy does not contemplate any ground-disturbing activity in the Route 15 area that could result in harm to the plaintiffs' interests in the Pågat area.  Doc. 71 at 3-4.

## D.    Statutory Background

### 1.    Administrative Procedure Act

The APA provides that a "person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. § 704; <u>Norton v. Southern Utah Wilderness Alliance</u>, 542 U.S. 55, 62 (2004). In reviewing agency action, the court may set aside the action only if it is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or (D) without observance of procedure required by law."  5 U.S.C.

§§ 706(2)(A), (C), (D).  The standard of review is narrow, as the court may not substitute its judgment for that of the agency.  <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 416 (1971); <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983).

### 2. National Environmental Policy Act

Congress enacted NEPA to ensure the agency will have detailed information on significant environmental impacts when it makes its decisions; and (2) to guarantee that this information will be available to a larger audience.  <u>Robertson v. Methow Valley Citizens Council</u>, 490 U.S. 332, 349 (1989).  NEPA directs federal agencies to consider potential effects of proposed federal action before implementation.  <u>Marsh v. Oregon Natural Resources Council</u>, 490 U.S. 360, 371 (1989).  The agency prepares an EIS when proposing "major Federal action significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2)(C).  NEPA's mandate to agencies is "essentially procedural . . . . It is to insure a fully informed and well-considered decision, . . ." <u>Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council</u>, 435 U.S. 519, 558 (1978) (citation omitted); <u>Robertson</u> at 350; <u>Marsh</u> at 371.

CEQ regulations interpret NEPA and set forth requirements for federal agencies.  <u>See</u> 40 C.F.R. Parts 1500-08; <u>Dep't of Transp. v. Public Citizen</u>, 541 U.S.

752, 756-57 (2004); <u>Andrus v. Sierra Club</u>, 442 U.S. 347, 358 (1979).  If an agency takes a "hard look" at environmental consequences, <u>Kleppe v. Sierra Club</u>, 427 U.S. 390, 410 n.21 (1976), its analysis should be upheld, <u>Laguna Greenbelt v. United States Dep't of Transp.</u>, 42 F.3d 517, 523 (9th Cir. 1994).  So long as adverse environmental effects of a proposed action are "adequately identified and evaluated, the agency is not constrained by NEPA from deciding that other values outweigh the environmental costs."   <u>Robertson</u>, 490 U.S. at 350.   NEPA "prohibits uninformed-rather than unwise-agency action." <u>Id</u>. at 351.

### 3.    National Historic Preservation Act

Congress enacted the NHPA, 16 U.S.C. §§ 470, et seq., with the goal of preserving, restoring and maintaining the historic and cultural environment of the Nation.  <u>See</u> <u>Presidio Golf Club v. National Park Service</u>, 155 F.3d 1153, 1158 (9th Cir. 1998).  The NHPA, like NEPA, creates obligations "that are chiefly procedural in nature; both statutes have the goal of generating information about the impact of federal actions on the environment; and both require that the relevant federal agency carefully consider the information produced.  That is, both are designed to insure that the agency 'stop, look, and listen' before moving ahead." <u>San Carlos Apache Tribe v. United States</u>, 417 F.3d 1091, 1097 (9th Cir. 2005).  The Advisory Council on Historic Preservation has promulgated regulations governing the four-step

consultation process undertaken pursuant to Section 106.  See 36 C.F.R. Part 800. These procedural obligations apply to the federal agencies, and there is no private right of action under the NHPA, so any claim for an alleged violation can only be brought under the judicial review provisions of the APA.  San Carlos Apache Tribe, 417 F.3d at 1097-98.

### 4.___Coastal Zone Management Act

Congress enacted the CZMA, 16 U.S.C. §§ 1451-1465, to develop a national program to balance competing uses and impacts to coastal resources.  A state voluntarily implements the program in partnership with the Federal Government by adopting and implementing a coastal zone management program (CMP) pursuant to federal regulations. 16 U.S.C. § 1455(d).  A CMP may include enforceable policies approved by the Secretary of Commerce.  Id.

Federal agencies determine if proposed activities affect coastal uses or resources covered by a state's approved CMP.  15 C.F.R. § 930.33(a).  If an activity has reasonably foreseeable effects, the agency must ensure that it is carried out in a manner "consistent to the maximum extent practicable" with enforceable policies of a state's approved CMP and provide a consistency determination to the appropriate state agency.  16 U.S.C. § 1456(c)(1)(A), (C).  If the state agency objects, state and federal agencies may engage in mediation.  15 C.F.R. § 930.44.  If unable to resolve

the dispute, the federal agency may proceed if it concludes that the proposed action is consistent to the maximum extent practicable with enforceable policies of the CMP. 15 C.F.R. § 930.43(d)(2). This determination is reviewable under the APA, but will not be overturned unless found arbitrary and capricious. California v. Norton, 311 F.3d 1162, 1170 (9th Cir. 2002).

## III.  ARGUMENT

### A.    Standard of Judicial Review

Federal Rule of Civil Procedure 12(b)(1) provides a defense of "lack of jurisdiction over the subject matter" of a claim. An assertion that a court lacks subject matter jurisdiction is a threshold issue to be addressed prior to considering the merits. Steel Co. v. Citizens for a Better Env't., 523 U.S. 83, 92-102 (1998). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989). When a defendant brings a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).

In considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court "may consider the evidence presented with respect to the

jurisdictional issue and rule on that issue, resolving factual disputes if necessary." Thornhill Publ'g Co. v. Gen. Tel. & Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979) (citations omitted); see Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1141 n.5 (9th Cir. 2003) (in "ruling on a 12(b)(1) jurisdictional challenge, a court may look beyond the complaint and consider extrinsic evidence."). If it is necessary to resolve factual disputes, the court does not presume that the allegations of the complaint are true; the plaintiffs bear the burden of establishing subject matter jurisdiction through affidavits or other appropriate evidence. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989).

**B.    The Court Should Dismiss this Complaint for Lack of Subject Matter Jurisdiction**

> **1.    The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims Because There is No Final Agency Action**

The plaintiffs' claims will lie, if at all, only under the APA, which requires the presence of a final agency action. Marsh, 490 U.S. at 375-76; Lujan v. National Wildlife Federation, 497 U.S. 871, 882-83 (1990) (pursuit of an APA claim requires (1) final agency action; and (2) an injury within the "zone of interests" of the statute); Ukiah Valley Med. Ctr. v. FTC, 911 F.2d 261, 264 n.1 (9th Cir. 1990) ("finality is . . . a jurisdictional requirement"). Here, the plaintiffs' claims should be dismissed because there has been no final agency action regarding the selection of a site for the

live-fire training range complex on Guam, which is the sole subject matter of all thirteen claims alleged under the three statutes in the Complaint.

Under the APA, an action is final only insofar as it is not a "preliminary, procedural, or intermediate agency action or ruling." 5 U.S.C. § 704. An agency action will be considered final if it (1) "marks the consummation of the agency's decision-making process," and (2) is "one by which rights or obligations have been determined or from which legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (internal citations and quotations omitted); AT&T Corp. v. Coeur d'Alene Tribe, 295 F.3d 899, 912 (9th Cir. 2002); Cent. Delta Water Agency v. United States Fish and Wildlife Serv., 653 F.Supp.2d 1066, 1073 (E.D. Cal. 2009). Both conditions must be satisfied for agency action to be final. Bennett, 520 U.S. at 178. "'[T]he core question is whether the agency has completed its decision-making process, and whether the result of that process is one that will directly affect the parties.'" Indus. Customers of NW Utils. v. Bonneville Power Admin., 408 F.3d 638, 646 (9th Cir. 2005) (quoting Franklin v. Massachusetts, 505 U.S. 788, 797 (1992)). In assessing the effects of an agency action, finality "must be interpreted in a pragmatic and flexible manner." Abbott Laboratories v. Gardner, 387 U.S. 136, 149-51 (1967). A court considers whether the agency action represents the final administrative word to insure that judicial will not interfere with agency decision-

making.  See FTC v. Standard Oil of Calif., 449 U.S. 232, 242-43 (1980).

Here, the Navy has not taken final agency action regarding the selection of a location for a live-fire training range complex on Guam because it has not consummated its decision-making process, as evidenced by the ROD, the PA, and the ongoing administrative process.  ROD at 2, 4-5, 32, 88; Ludovici Declaration ¶ 13.  First, the ROD was not the Navy's last word on the matter of locating the live-fire training range complex.  See Sierra Club v. U.S. Nuclear Reg'y Comm'n, 825 F.2d 1356, 1362 (9th Cir. 1987) (stating that "an order is final when the administrative agency has given its last word on the matter.") (internal citations omitted).  The ROD did not consummate the decision-making process.  At most, the ROD acknowledged that the Navy had identified a preferred alternative in the Guam FEIS.  ROD at 5 ("Alternative A remains [Navy's] preferred alternative."); ROD at 32 (same); see 40 C.F.R. § 1502.14(e) (2011) (directing agencies to include a preferred alternative in each EIS); see Public Citizen v. Office of U.S. Trade Representative, 970 F.2d 916, 917-20 (D.C. Cir. 1992) (rejecting premature challenge before final agency action taken).  The ROD, however, expressly postponed any final decision on the siting of the live-fire training range complex until after the Section 106 process was completed.  See ROD at 2, 4-5, 32, 88; Ludovici Declaration ¶¶ 10, 13.  Further, interpreting the concept of finality in a pragmatic manner must lead to the conclusion

that, although language of the ROD may suggest the Navy anticipated it would select one of the two action alternatives at some point, the ROD did not render a decision on the location of the live-fire training range complex.

Second, the commitments made by DoD and the Navy in the PA confirm that, with respect to the live-fire training range complex, the ROD did not constitute a final agency action. Indeed, rather than proceeding with activities to construct a range at the Route 15 area near Pågat, after issuing the ROD, DoD committed, in the PA, to a consultation process that "will address the location, orientation, design, and operation of the ranges within *any area that may be selected* in the Navy's Record of Decision … for the live-fire training range complex." PA at 15 (emphasis added). This language clearly refers to <u>any</u> area that may be selected, thus recognizing that locations other than the Route 15 area remain open for consideration. The DoD's specific commitment in the PA provides for "unimpeded access" to Pågat Village and Pågat Cave "*if* DoD selects an alternative for the range complex in the Route 15 area as noted in the FEIS." PA at 16 (emphasis added). On its face, the PA's language is preliminary, conditional, and speculative, all of which are the polar opposite of finality; the PA confirms that the ROD did not provide a final decision on the live-fire training range complex. DoD's commitments in the PA contradict and disprove the plaintiffs' erroneous assertion that the Navy made a final decision in the ROD with

respect to the live-fire training range location in the Route 15 area near Pågat.

Third, the Navy's ongoing review process for the training range complex's location further demonstrates that Navy has not consummated this decision-making process. As Mr. Ludovici's Declaration describes, the Navy initiated the current process as a result of its efforts to satisfy DoD's commitment in the PA "to providing 24 hour a day/seven day a week unimpeded access to the Pagat Village and Pagat Cave historical sites, as part of the measures to avoid, minimize and mitigate impacts on historic properties," in the event that DoD eventually were to select a site for the training range complex in the Route 15 area. PA at 16-17; Ludovici Declaration ¶ 12. Specifically, Mr. Ludovici attested that the current process was initiated by the Navy in "order to honor its commitment in the PA-if the complex were to be placed at the preferred alternative identified in the Guam FEIS-the Navy considered how it could minimize the physical footprint of the live-fire training range complex in order to minimize the impact to cultural resources." Id. ¶ 14.

The ongoing review process is being applied to sites under consideration and involves as assessment of sites other than those located along Route 15 near Pågat. The ongoing review process – designed to inform the Navy's ultimate decision about where, specifically, to locate the proposed live-fire training range complex – undercuts the plaintiffs' erroneous assertion that the language in the ROD constituted

a final decision to locate the complex in the Route 15 area near Pågat.  See Haw. Cnty. Green Party v. Clinton, 124 F. Supp. 2d 1173, 1195-96 (D. Haw. 2000) (dismissing action where Navy's decision process had not been consummated, notwithstanding expenditures on sonar systems including construction of a seagoing vessel); see also Sierra Club v. U.S. Nuclear Reg'y Comm'n, 825 F.2d at 1362 ("we will not entertain a petition where pending administrative proceedings or further agency action might render the case moot and make judicial review completely unnecessary").

As to the second element of finality, because the ROD did not consummate the Navy's continuing decision-making process, it does not – and could not – impose any obligations, deny any rights, or fix any legal relationships with respect to the live-fire training range complex.  See Ukiah Valley, 911 F.2d at 264.  No legal consequences flow from the ROD in regard to the live-fire training range complex, nor will legal consequences begin to flow until some time after the Navy actually issues a decision selecting a specific site for the complex.

The clearest evidence that the plaintiffs will not suffer any adverse impacts or consequences as a result of the ROD is the incontrovertible fact that, absent a future decision to select a specific site for the training range complex in the Route 15 area near Pågat, the Navy will not undertake any action in that area that could result in any

adverse environmental impact that would harm the plaintiffs' stated interests.  As discussed Captain Chandler's Declaration at ¶ 25, limited ground-disturbing activities such as soil borings could occur to aid in environmental feasibility studies associated with potential acquisition of property.   Such limited activities, however, would neither preclude the Navy from siting the live-fire training range complex at another location that is a reasonable alternative, nor otherwise conflict with DoD's legal obligations.   See Haw. Cnty. Green Party v. Clinton, 124 F. Supp. 2d at 1198 (granting dismissal based on finding that Navy's preliminary activities do not establish rights or determine obligations regarding future deployment).   Moreover, as the defendants informed the court in the June 16 Letter Brief (Doc. 71) at 3-4:

> because the President's proposed budget for Fiscal Year 2012 does not propose funding for the acquisition of land for the training range complex, see Chandler Declaration, ¶ 23, absent changes in Congressional authorization and appropriation of funds in Fiscal Year 2012, Defendants do not anticipate that they will receive the funds necessary to acquire land for a live-fire training range complex.

The Navy also has not awarded any contracts for construction of a future training range complex.  Chandler Declaration ¶¶ 18-21.  Nor has the Navy established rights or imposed or incurred any obligations related to the live-fire training range complex on Guam.  Haw. Cnty. Green Party, 124 F. Supp. 2d at 1198 (dismissal based partly on finding that "the Navy has neither a right nor an obligation to deploy [the sonar

system] simply because it has tested and spent money on the system."). The ROD did not create any obligations, deny any rights, or fix any legal relationships for the training range complex.

Courts have identified certain "indicia of finality," such as whether "the action amounts to a definitive statement of the agency's position," whether the action "has a direct and immediate effect on the day-to-day operations" of the party seeking review, and whether "immediate compliance with the terms is expected." Indus. Customers of NW Utils. v. BPA, 408 F.3d 638, 646 (9th Cir. 2005) (quoting Cal. Dep't of Water Res. v. FERC, 341 F.3d 906, 909 (9th Cir. 2003)); see also Ukiah Valley, 911 F.3d at 264 (quoting FTC v. Standard Oil Co., 449 U.S. at 239). None of the requisite indicia of finality are present.

The defendants' actions do not constitute a definitive statement of the agency's position with respect to the final location for the training range complex. The inchoate and preliminary nature of the agency's decision-making process is evidenced by the Navy's ongoing consideration of whether to apply probabilistic modeling to any other locations identified during the EIS process. Ludovici Declaration ¶¶ 21-22; Sobieranski Declaration ¶ 30. No action by the defendants' for the live-fire training range complex, to date, has had "a direct and immediate effect on the day-to-day operations" of plaintiffs relating to the area near Pågat.

**2.     The Court Lacks Subject Matter Jurisdiction Because Plaintiffs' Claims Are Not Ripe for Judicial Review**

A claim also must establish a "ripe case or controversy" under Article III for a federal court to have subject matter jurisdiction.  A court considers: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented."  Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 733 (1998).  The ripeness doctrine is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  Cent. Delta Water Agency, 653 F.Supp.2d at 1083 (quoting Abbott Labs. v. Gardner, 387 U.S. at 148-49), overruled on other grounds, Califano v. Sanders, 430 U.S. 99 (1977)).  Applying the Ohio Forestry three-factor test, the plaintiffs' claims clearly are not ripe for review at this time.

First, ripeness will prevent review if the systematic interest in postponing adjudication due to lack of fitness outweighs the hardship on the parties created by postponement.  Municipality of Anchorage v. United States, 980 F.2d 1320, 1323

(9th Cir. 1992).  The Ninth Circuit has held that, under the "traditional hardship prong, it must be shown that withholding review of the issue would result in direct and immediate hardship and would entail more than possible financial loss." Id. at 1325-26; see also Wilderness Soc'y v. Ward, 188 F.3d 1130, 1133 (9th Cir. 1999) ("Ohio Forestry embraces the eminently sensible proposition that harm is best assessed when it is tangible, rather than theoretical.").

The plaintiffs must show that they will suffer "immediate, direct, or significant hardship" if judicial review is delayed, which they have failed to demonstrate. Municipality of Anchorage v. United States, 980 F.2d at 1326-27.  Here, the defendants demonstrated that delayed review would not cause hardship to the plaintiffs because the Navy will not take any action at the Route 15 area until it has issued a supplemental ROD.  See Defendants' June 16, 2011, Letter Brief (Doc. 71) at 3-4.  The plaintiff cannot show that delaying judicial review until the process is complete will inflict serious hardship.

Moreover, the speculative harm the plaintiffs fear may never materialize.  The Navy ultimately may decide to locate the live-fire training range complex at a location other than Route 15, which would avoid the need to adjudicate their claims.  See Devia v. Nuclear Regulatory Comm'n, 492 F.3d 421, 425 (D.C. Cir. 2007) (plaintiff's petition to review agency permitting decision was not ripe where land managing

agencies denied right-of-way for project); <u>Town of Fairview v. U.S. Dept. of Transp.</u>, 201 F. Supp.2d 64, 75 (D.D.C. 2002) (insufficient evidence of hardship where no construction had occurred and future construction was not imminent).

Second, judicial intervention at this stage would inappropriately interfere with ongoing administrative action, as described in defendants' declarations. Because the Navy has not issued a final decision regarding the siting of the live-fire training range complex, judicial intervention at this time would require resolution of the case based upon an incomplete administrative record, which continues to evolve with respect to the future training range complex location. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" <u>Texas v. United States</u>, 523 U.S. 296, 300 (1998) (quoting <u>Thomas v. Union Carbide Agric. Products Co.</u>, 473 U.S. 568, 580-581 (1985)). If this case were to proceed to adjudication on the merits before the Navy issues a decision as to the location of the live-fire training range complex, it would place the defendants in the position of defending an action without the benefit of the whole record. Additionally, it would require the court to make an advisory opinion on the basis of an incomplete record, contrary to the requirements for judicial review under the APA.

Lastly, the court would benefit greatly from further development of the facts surrounding the claims presented in the Complaint. Awaiting the issuance of a final

Navy decision regarding the siting of the live-fire training range complex, which includes consideration of the results and analysis of the ongoing process (described in detail in the Ludovici Declaration) would provide this court with a much more complete basis for this court to review the Navy's final decision.  The proper time to challenge a decision regarding the live-fire training range complex would be *after* the Navy makes its decision, assuming, of course, that the plaintiffs otherwise satisfy the constitutional and statutory requirements for judicial review.  The ROD, PA, and Mr. Ludovici's Declaration all make clear that the Navy has not yet made a decision.  Nor can the plaintiffs demonstrate that they would suffer hardship with regard to their interest pertaining to the Pågat area by having judicial review withheld at this time, as demonstrated in the Chandler Declaration, ¶¶ 27-29; see Defendants' Letter Brief (Doc. 71) at 3-4.  There is no valid reason to expend the court's time adjudicating what remains, at this time, a hypothetical undertaking.

## C.      The Court Alternatively Should Defer Review on Prudential Grounds

### 1.      The Doctrine of Prudential Ripeness Counsels Against Exercising Judicial Review at this Juncture

The Navy is continuing its internal administrative review, as the court recognized in its June 30 Order.  Doc. 76 at 14-15.  Even if the court were to decide that the ROD constitutes final agency action, the court nevertheless should exercise

its jurisprudential authority to allow the Navy to complete its internal review before proceeding to decide this case on the merits.  See Nat'l Park Hospitality Ass'n v. Dep't of the Interior, 538 U.S. 803, 808 (2003) (recognizing prudential dimension of ripeness doctrine in dismissing premature challenge); cf. McClung v. City of Summer, 548 F.3d 1219, 1224 (9th Cir. 2008) (noting ripeness challenge as involving prudential as well as Article III considerations).  One possible outcome of the Navy's review would be the selection of a different site on Guam, other than the Route 15 area, which would moot the plaintiffs' claims and warrant dismissal of the litigation. That possibility certainly warrants withholding judicial review on the merits.

## 2.    The Doctrine of Primary Jurisdiction Also Warrants Deferring Premature Judicial Review

The court, alternatively, should dismiss the Complaint or stay the litigation under the prudential doctrine of primary jurisdiction, which provides authority for courts to refer decisions in the first instance to the agency charged with primary responsibility for the activity involved.  See generally Rhoades v. Avon Products, 504 F.3d 1151, 1162 (9th Cir. 2007); United States v. Culliton, 328 F.3d 1074, 1081 (9th Cir. 2003).  Primary jurisdiction "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts."

Poulos v. Caesars World, Inc., 379 F.3d 654, 670 (9th Cir. 2004) (citing Syntek Semiconductor Co. v. Microchip Tech., Inc., 307 F.3d 775, 780 (9th Cir. 2002). In determining whether to apply the primary jurisdiction doctrine, courts assess "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." United States v. Gen. Dynamics Corp., 828 F.2d 1356, 1362 (9th Cir. 1987).

Here, Congress delegated to the Secretary of Defense (and, by subdelegation, the Secretary of the Navy) the authority to determine appropriate actions for the nation's military defense and security. The Navy is responsible, in the first instance, for selecting a site for the live-fire training range complex in connection with the proposed military relocation from Okinawa to Guam, pursuant to statute and treaty obligations with the Government of Japan. See ROD at 8-9; FEIS at ES-2 to ES-5 (describing purpose and need for Guam Relocation). Congress tasked DoD and the Navy with the responsibility to evaluate impacts of the Guam Relocation, including the training range complex, pursuant to NEPA. 42 U.S.C. § 4332. The Navy is discharging this responsibility. See generally Vol. 2, Final Environmental Impact Statement, Guam and CNMI Military Relocation, pp. 2-41 to 2-87 (2010). Through

the ongoing review process, the Navy will decide whether further NEPA analysis is necessary for the live-fire training range complex.  Ludovici Declaration ¶ 22.

Deferring judicial review under the doctrine of primary jurisdiction is warranted to enable the Navy to complete its administrative review and select a site for the live-fire training range complex.  This decision, impacting required training of Marines preparing for deployment to Iraq, Afghanistan, and other locations essential to protecting the nation's defense and security, is the type of "particularly complicated issue that Congress has committed," here, to DoD and the Navy.  See Brown v. MCI WorldCom Network Servs., Inc., 277 F.3d 1166, 1172 (9th Cir.2002).  The "initial decisionmaking responsibility should be performed by the relevant agency rather than the courts."  Poulos v. Caesars World, Inc., 379 F.3d at 670.

## IV.  CONCLUSION

After DoD and Navy complete the ongoing review process, possibly prepare a supplemental environmental impact statement, and ultimately issue a decision for the location of the live-fire training range complex, review by this court of plaintiffs' claims may be appropriate, assuming they can identify a final agency action and a live case or controversy ripe for review.  At present, however, the plaintiffs' Complaint does not challenge a final agency action, their claims are not ripe for judicial review, and prudential considerations warrant dismissal or stay of the litigation.

Respectfully submitted this 29th day of July, 2011.

FLORENCE T. NAKAKUNI
United States Attorney

DERRICK WATSON (Cal. Bar No. 154427)
Assistant United States Attorney
District of Hawaii
PJKK Federal Building, Room 6-100
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Tel: (808) 541-2850 / Fax: (808) 541-3752
Email: Derrick.Watson@usdoj.gov

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

SAMANTHA KLEIN FRANK
   N.Y. Bar No. SK-9874
Trial Attorney, Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 663, Ben Franklin Station
Washington, DC 20004-0663
Tel: (202) 305-0474 / Fax: (202) 305-0506
Email: samantha.frank@usdoj.gov

/s/ *Charles R. Shockey*

CHARLES R. SHOCKEY, D.C. Bar No. 914879
Trial Attorney, Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
501 "I" Street, Suite 9-700
Sacramento, CA 95814-2322
Tel:  (916) 930-2203 / Fax: (916) 930-2210
Email: charles.shockey@usdoj.gov
Attorneys for Defendants

OF COUNSEL:

JENNIFER ALLAIRE
JONELLE DILLEY
JEANINE WOMBLE
Navy Litigation Office
Washington, D.C.

GUAM PRESERVATION TRUST v. GREGORY, 1:10-CV-00677-LEK-RLP
DEFENDANTS' MEMORANDUM I/S/O MOTION TO DISMISS COMPLAINT                30

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 29, 2011, I electronically filed the

"Defendants' Memorandum in Support of Motion to Dismiss the Complaint" with

the Clerk of the Court using the ECF system, which automatically will send email

notification to the attorneys of record listed below:

      Carl C. Christensen
      1612 Kamole Street
      Honolulu, Hawaii 96821
      Email: carlcc@hawaii.rr.com

      Nicholas C. Yost
      Matthew G. Adams
      SNR Denton US LLP
      525 Market Street, 26th Floor
      San Francisco, CA 94105
      Email: nicholas.yost@snrdenton.com
           matthew.adams@snrdenton.com

      Derrick Watson (Cal. Bar No. 154427)
      Assistant U.S. Attorney, District of Hawaii
      PJKK Federal Building, Room 6-100
      300 Ala Moana Boulevard
      Honolulu, Hawaii 96850
      Email: Derrick.Watson@usdoj.gov

      /s/ *Charles R. Shockey*
      Charles R. Shockey
      U.S. Department of Justice